UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHESTER C. RYCHEL,

      Plaintiff,

v.                                          CASE No. 8:09-CV-926-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

ORDER

      The plaintiff in this case seeks judicial review of the denial of his

claims for Social Security disability benefits and supplemental security

income payments.[1]  Because the decision of the Commissioner of Social

Security is supported by substantial evidence and does not contain any

reversible error, the decision will be affirmed.

I.

      The plaintiff, who was fifty-eight years old at the time of the

most recent administrative hearing and has the equivalent of a high school

_____

[1]The parties have consented in this case to the exercise of jurisdiction by a United
States Magistrate Judge (Doc. 15).

education, has previously worked as an order clerk, plastics packer, and lineman helper (Tr. 461, 484-85). Additionally, during the alleged disability period, the plaintiff has worked as a telephone operator, cashier, and a doorman (Tr. 485-86). The plaintiff filed claims for Social Security disability benefits and supplemental security income payments, alleging that he became disabled in September 2001 due to arthritis in both knees and ankles, high blood pressure, and lower back pain (Tr. 85). The claims were denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge in May 2003 (Tr. 28). The law judge found that the plaintiff has severe impairments that limit him to a wide range of light work (Tr. 16, 17). The law judge determined that these restrictions prevented the plaintiff from returning to past work (Tr. 17). However, based upon the testimony of a vocational expert, the law judge ruled that there were other jobs that exist in significant numbers in the national economy that the plaintiff could perform, such as cashier, ticket seller, and bench assembler (id.). Accordingly, the law judge decided that the plaintiff was not disabled

(id.). The Appeals Council let the decision of the law judge stand as the final decision of the Commissioner.

The plaintiff then sought judicial review in this court of the Commissioner's decision (Case No. 8:04-CV-2346-T-26EAJ). This court remanded the matter for further proceedings pursuant to sentence four of 42 U.S.C. 405(g), because the law judge "failed to consider whether there is objective medical evidence confirming the severity of Plaintiff's pain" (Tr. 294).

After remand, two more hearings were conducted by the same law judge. A hearing in December 2006 was recessed in order to obtain orthopedic and rheumatological evaluations of the plaintiff, who had not been to a physician in several years (Tr. 445, 448, 450). Another hearing was conducted on June 21, 2007, during which the law judge received reports from two consultative examinations and additional exhibits (Tr. 455-56). Following that hearing, the law judge found that the plaintiff had "severe impairments of bilateral degenerative osteoarthritis of the knees, status-post left knee arthroscopy (March 2003) with post-op evidence of medial meniscus tear, lateral meniscus tear, and grade II-IV chonodromalacia, hypertension,

-3-

hypercholesterolemia, angina, degenerative disease of the lumbar spine and obesity" (Tr. 260). The law judge found that the plaintiff's impairments restricted him to light work with a limitation that he not stand or walk more than two hours in an eight-hour workday (Tr. 265). The law judge found that, with this residual functional capacity, the plaintiff could perform his prior job as an order clerk, which the vocational expert testified is sedentary work (Tr. 267-68). Accordingly, the law judge decided that the plaintiff was not disabled (Tr. 268). Subsequently, the Appeals Council let the decision of the law judge stand as the final decision of the Commissioner and explained the basis for that determination (Tr. 247-48).

## II.

A. In order to be entitled to Social Security disability benefits and supplemental security income, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical,

physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004)(en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the

witnesses. <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

B. The Commissioner's regulations set out what is termed a "sequential" analysis for deciding disability claims. <u>See</u> 20 C.F.R. 404.1520, 416.920. One of the threshold inquiries (step two) is whether a claimant has a severe impairment. 20 C.F.R. 404.1520(c), 416.920(c). An impairment is not severe if it does not significantly limit a claimant's physical or mental abilities to do basic work activities. 20 C.F.R. 404.1521(a), 416.921(a). If

an impairment is not severe, then a claimant is deemed to be not disabled. 20 C.F.R. 404.1520(c), 416.920(c).

When an impairment is severe, but does not meet, or equal, a listing in Appendix 1 (step three), a further inquiry (step four) is made as to whether the impairment prevents the claimant from doing past relevant work. 20 C.F.R. 404.1520(f), 416.920(f). If a claimant cannot do such work, an additional determination (step five) is made concerning whether the claimant can perform other work which exists in substantial numbers in the national economy. 20 C.F.R. 404.1520(g), 416.920(g). In such cases, the regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules, known as "guidelines" or "grids," that are appended to the regulations. 20 C.F.R. Part 404, Subpart P, Appendix 2.

### III.

In 1992, the plaintiff hurt his knees while stepping off of a truck at work (Tr. 133). Although he returned to work several months after the accident, the plaintiff asserts that persistent knee problems have disabled him

from working since September 2001 (Tr. 85). The plaintiff raises three issues in challenging the law judge's determination that he could perform a limited range of light work. None warrants reversal.

A. The plaintiff argues first that the law judge misapplied the Eleventh Circuit's pain standard by failing to consider whether the objective medical evidence confirms the alleged severity of his pain (Doc. 16, pp. 13-16). The Eleventh Circuit has set forth a standard for evaluating complaints of pain and other subjective symptoms. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals stated in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that there is objective medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express

a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

In this case, the law judge recognized the need to articulate a credibility determination, and referred to the pertinent regulations and Social Security rulings (Tr. 263). The law judge also set forth the standards that are reflected in the regulations (id.). Moreover, the law judge found that "the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but that these statements concerning the intensity, persistence and limiting effects of ... [his] symptoms are not entirely credible" (Tr. 264).

The plaintiff argues that the law judge's analysis of the plaintiff's complaints of pain was inadequate because the law judge did not acknowledge the element of "objective medical evidence to confirm the severity of the alleged pain arising from the condition," and did not evaluate that element (Doc. 16, pp. 16-17). This contention is unpersuasive.

In the first place, this element is not reflected in either the Social Security Act or in the regulations. Thus, the Act provides in pertinent part (42 U.S.C. 423(d)(5)(A)):

-9-

An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

Similarly, the regulations state (20 C.F.R. 404.1529(a), 416.929(a)):

In determining whether you are disabled, we consider all your symptoms, including pain, and the extent to which your symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.... However, statements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the

> pain or other symptoms alleged and which, when
> considered with all of the other evidence (including
> statements about the intensity and persistence of
> your pain or other symptoms which may reasonably
> be accepted as consistent with the medical signs
> and laboratory findings), would lead to a
> conclusion that you are disabled.

Consequently, the statutory and regulatory law does not contain a standard of "objective medical evidence to confirm the severity of the alleged pain."

That factor came from S. Rep. No. 98-466, at p. 24 (1984), which was quoted in Hand v. Heckler, supra, 761 F.2d at 1548. See Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1214-16 (11th Cir. 1991)(discussing history of the pain standard). The Senate bill, S. 476, 98th Cong., 2nd Sess. (1984), which was accompanied by S. Rep. No. 98-466, resulted, after a conference with a House Committee, in the Social Security Disability Benefits Reform Act of 1984, 98 Stat. 1794 (1984). The language of the pain standard in that Act, which had a sunset provision, is the same as that quoted above, which was subsequently reenacted. The essence of both the 1984 law and the current law is the requirement that there be, as the law judge noted (Tr. 263), objective medical evidence of a condition that could reasonably be expected to cause the pain alleged. See 42 U.S.C. 423(d)(5)(A). Neither law

contained an alternative of objective medical evidence to confirm the severity

of the alleged pain. Significantly, that alternative was not even an element

proposed in S. 476, which S. Rep. No. 98-466 accompanied. In other words,

not only did the element of objective medical evidence confirming the

severity of pain not became law, it was not even proposed to become law.[2]

Furthermore, if the alternative had been enacted (or a

corresponding regulation promulgated), it would not provide any meaningful

option for evaluating pain. The purpose of the alternative would have been

to permit pain findings to be based upon objective medical evidence if, in the

future, medical procedures were developed to test the severity of pain. This

is shown by the language calling for <u>objective</u> medical evidence that <u>confirms</u>

the <u>severity</u> of pain. Such a requirement is patently different from the

statutory and regulatory requirement of objective medical evidence that could

---

[2]The inclusion in S. Rep. No. 98-466 of the alternative of objective medical evidence confirming the severity of pain when it was not included in S. 476 brings to mind Supreme Court criticism of legislative history due to staffers putting material in the Senate and House Reports that is not voted upon by the legislators. See, e.g., Exxon Mobil Corp. v. Allapattah Services, Inc., 545 U.S. 546, 568 (2005); Blanchard v. Bergeron, 489 U.S. 87, 98-99 (1989). Notably, S. Rep. No. 98-466, at p. 24, states that the proposed amendment "should be seen as a codification of the regulations and policies currently followed by the [Social Security] Administration." Those regulations and policies did not encompass any standard regarding objective medical evidence confirming the severity of pain. Consequently, in the unlikely event any legislator read S. Rep. No. 98-466, he or she would have been given inaccurate information regarding the standard that was set out in the report.

reasonably be expected to give rise to the pain. Thus, the language of an alternative of objective medical evidence that confirms the severity of pain contemplates the development of tests that will show levels of pain.

This view is corroborated by the 1987 report of the Commission on the Evaluation of Pain, which was created by the 1984 Act. Among other things, "[t]he Commission was asked whether a valid and reliable method of measuring pain for purposes of assessing impairment due primarily to pain exists." Social Security Bulletin, January 1987/Vol. 50, No. 1, at 30. The finding was that "[n]umerous attempts have been made to try to develop methodologies for measuring pain objectively" but that "[t]his is, as yet, not possible...." Id. at 33.

The fact that the Pain Commission was asked to investigate whether pain could be measured objectively indicates that the alternative of objective medical evidence confirming the severity of pain was stuck in S. Rep. No. 98-466 (but not in S. 476) in the hope that objective tests for pain could be developed. However, the Commission's report indicates that, as of 1987, there were no such tests. And, in all the Social Security cases I have

handled since that time, I have never seen any objective measurement of pain. There is certainly no such evidence in this case.

Under these circumstances, the law judge did not err because he did not expressly state, and evaluate, an alternative requirement of objective medical evidence that confirms the severity of the alleged pain. As explained, that alternative has never been enacted into law by statute or regulation. Rather, those sources of law set forth the requirement of medical signs and laboratory findings which show a medical impairment that could reasonably be expected to produce the alleged pain. See 42 U.S.C. 423(d)(5)(A); 20 C.F.R. 404.1529(a), 416.929(a). The law judge applied that test (Tr. 263). In fact, although the law judge discounted the plaintiff's subjective allegations of pain (Tr. 264-65), he expressly found "that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms" (Tr. 264). Having appropriately applied the standard set out in §423(d)(5)(A) and the regulations, the law judge cannot be found to have made an error of law because he did not expressly address the alternative test set out in the Eleventh Circuit pain standard, which resulted from a quotation in a Senate Report that was inaccurate. This conclusion is

-14-

confirmed by the statement in <u>Wilson</u> v. <u>Barnhart</u>, 284 F.3d 1219, 1226 (11th

Cir. 2002), that the regulation (20 C.F.R. 404.1529), "contains the same

language regarding the subjective pain testimony that this Court interpreted

when initially establishing its three-part pain standard." Thus, <u>Wilson</u>

indicates that the standard set out in the regulations is equivalent to the

Eleventh Circuit's test.

      Furthermore, even if a factor of objective medical evidence

confirming the severity of pain were legally binding, the law judge's failure

to address that factor would be harmless error. As previously explained. any

such factor would contemplate the development of objective medical tests to

measure the severity of pain. There is no objective medical evidence in this

case which confirms the severity of the plaintiff's pain. The plaintiff merely

cites to findings that would reasonably be expected to give rise to the alleged

pain (Doc. 16, pp. 14-16). The law judge properly considered that aspect of

the pain standard and concluded that the plaintiff had met it. In short, the law

judge, in all events, did not commit reversible error in his application of the

pain standard.

It is appropriate to add that the law judge, having concluded that the plaintiff's impairments could reasonably be expected to give rise to the alleged pain, properly proceeded to assess the credibility of the plaintiff's complaints of pain. He discounted the plaintiff's subjective complaints and provided a reasonable basis for that credibility determination (Tr. 264-65). The plaintiff does not challenge that determination. In light of the scheduling Order, any such challenge is deemed abandoned (Doc. 14, p. 2).

B. The plaintiff contends next that the law judge's decision to give weight to the opinions of consultative examiner Dr. Himagiri Ravi, over the opinions of consultative examiner Dr. James D. Melton, Jr., constituted error (Doc. 16, p. 17). In February 2007, Drs. Ravi and Melton examined the plaintiff. Dr. Melton essentially opined that the plaintiff was disabled, and Dr. Ravi opined that the plaintiff could work (Tr. 328-29, 339-40). The law judge appropriately exercised his responsibility to weigh conflicting evidence by explaining why he rejected Dr. Melton's opinion of disability and accepted Dr. Ravi's opinion that the plaintiff was not disabled.

Dr. Melton, an orthopedic medical doctor, opined that the plaintiff could occasionally lift twenty pounds and frequently lift ten pounds,

-16-

that he could stand and/or walk less than two hours total in an eight-hour workday, and sit less than six hours in an eight-hour workday (Tr. 328-29). Dr. Melton further opined that the plaintiff could never climb, balance, kneel, crouch, crawl or stoop (Tr. 329, 331). Thus, according to Dr. Melton, the plaintiff could not even perform sedentary work and, accepting Dr. Melton's opinions, the plaintiff would be disabled.

The law judge considered, and declined to accept, Dr. Melton's opinions that the plaintiff could not engage in postural movements or sit a total of six hours during the workday, explaining that those opinions are "inconsistent with the claimant's spotty treatment history; the claimant's recent work history; and, the claimant's own recent admission to his VA doctors that his pain was well controlled" (Tr. 266). The law judge added that Dr. Melton's opinions were also inconsistent with his examination findings that the plaintiff exhibited no sign of muscle atrophy or diminished muscle strength (Tr. 265). Significantly, the law judge stated that, "[i]f Dr. Melton's assessment is to be accepted the claimant would not be able to do the job he presently admits he is doing" (Tr. 267).

This explanation provided an adequate basis for not fully crediting Dr. Melton's opinions, and it is supported by substantial evidence. Thus, the law judge stated correctly that the plaintiff's present job as a cashier and his job as a doorman during the alleged disability period demonstrate the plaintiff's ability to work to some extent at the light level of employment and, in all events, require functioning that Dr. Melton opines is beyond the plaintiff's capabilities (Tr. 266-67, 485-86).[3]

Further, there is evidentiary support for the law judge's statement that several of Dr. Melton's examination findings are inconsistent with his opinions. Thus, although Dr. Melton observed limited motion in the plaintiff's knees with crepitus under the patellae, Dr. Melton noted that there was "no heat, redness or effusion and no gross instability" (Tr. 323). Also, Dr. Melton's examination revealed only "mild limitation of motion ... in the hips, ankles ... shoulders ... [and] spine .... [and] no obvious muscle atrophy

---

[3]The plaintiff testified at the administrative hearing that his cashier job requires him to stand, although he is permitted to sit when there are no customers (Tr. 467). The plaintiff stated that, as a doorman, he sat on a barstool for five hours (Tr. 463). The plaintiff asserts that he was able to work as a doorman for thirteen months because he drank alcohol while working to alleviate his knee pain (id., p. 8). The law judge rejected this contention as incredible (Tr. 260), and this conclusion is supported by medical records in which the plaintiff told medical providers that he does not drink alcohol (Tr. 267, 365; see also Tr. 200, 211).

or wasting and no specific sensory or motor deficit...." (id.).  The law judge could reasonably think that these findings are inconsistent with the severe functional limitations opined by Dr. Melton.

Moreover, as the law judge noted, VA records reflect that the plaintiff's bilateral knee pain is "well controlled" on the medication Ultram (Tr. 266, 344).  Thus, the plaintiff told his VA physician that his pain is fairly well controlled on Ultram (Tr. 343).  Further, since being prescribed Ultram, the plaintiff has demonstrated a full range of motion of joints without deformity or instability (Tr. 344), a normal gait (Tr. 414), and normal motor strength (Tr. 402, 414).  Additionally, a VA report from June 2007 states that the plaintiff "Walks Frequently" and there is "No Limitation" on his mobility (Tr. 413).

Significantly, the record does not reflect any limitations on the plaintiff's functioning by his treating physicians, and the other medical opinions in the record concerning the plaintiff's residual functional capacity are less restrictive than Dr. Melton's assessment.  Thus, the other medical opinions regarding the plaintiff's functioning do not support Dr. Melton's opinions of disabling limitations.

The plaintiff quibbles with the reasons given by the law judge for rejecting Dr. Melton's opinions (Doc. 16, pp. 20-21). However, he has not shown that those reasons are unsupported by substantial evidence. Thus, the plaintiff argues, incorrectly, that Dr. Melton's opinions are not inconsistent with his work history because Dr. Melton "opined that [he] would not be able to <u>consistently</u> stand and walk for 2 hours in an 8 hour work day" (<u>id.</u>) (emphasis in original). The opinion endorsed by Dr. Melton in the Medical Source Statement was that the plaintiff could stand and walk less than two "hours total" in a workday (Tr. 328). Thus, the law judge could reasonably conclude that this limitation, and Dr. Melton's opinion that the plaintiff could "never" climb, balance, kneel, crouch, crawl or stoop are inconsistent with the plaintiff's work history.

Further, the plaintiff argues that the law judge should not have considered his failure to seek medical treatment for several years because he lacked the financial resources to do so. However, the law judge stated, reasonably enough, that the plaintiff's substantial gainful activity in 2005, totaling approximately $12,000, belies the contention that the plaintiff could

not have sought at least one or two instances of treatment if he was in disabling pain (Tr. 265, 464).

Additionally, the plaintiff contends that the law judge improperly considered the plaintiff's statement that the prescription medication Ultram controlled his pain (Doc. 16, p. 21). Thus, the plaintiff argues that "because pain is 'controlled' does not mean that it is gone, or causes no limitations" (id.). However, the law judge did not state that Ultram eliminated the plaintiff's pain; rather, the law judge reasonably found that it refutes the plaintiff's allegations of disabling pain, explaining that "an individual with the pain allegations the plaintiff offers would not make such a statement to his/her treating doctors" (Tr. 265). In sum, the plaintiff's challenges to the law judge's explanation for rejecting Dr. Melton's opinions are meritless.

The plaintiff argues further that  20 C.F.R. 404.1527(d)(3)-(6), which articulates factors for the law judge to consider in evaluating opinion evidence, such as the physician's specialty and the consistency of the physician's opinions with the record, dictates that Dr. Melton's opinions should have been given greater weight than Dr. Ravi's opinions (Doc. 16, pp. 17-18).

-21-

Dr. Ravi, who also performed a consultative examination of the plaintiff in February 2007, opined that the plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand and/or walk at least two hours, and had no limitations on sitting (Tr. 339-42). Dr. Ravi additionally opined that the plaintiff was limited to frequent postural movements (Tr. 340). The law judge gave Dr. Ravi's opinions greater weight than Dr. Melton's (Tr. 265), noting that, in addition to the inconsistencies between Dr. Melton's opinions and the record, Dr. Ravi's consultative examination was more thorough, and his opinions were more consistent with his observations on physical examination (Tr. 265-67).

The plaintiff argues that Dr. Melton's opinions should have been given greater weight because Dr. Melton's specialty is orthopedics, Dr. Melton reviewed more of the plaintiff's medical file, and  Dr. Melton's opinion is more consistent with the record as a whole (Doc. 16, pp. 18-19). The record reflects that Dr. Melton's specialty is orthopedics, and the record

is unclear as to Dr. Ravi's specialty, so this factor does favor Dr. Melton.[4] However, this factor is not dispositive, and the law judge expressly acknowledged Dr. Melton's specialty (Tr. 265).

Moreover, there is substantial evidence supporting the law judge's decision to give greater weight to Dr. Ravi's opinions. Thus, during Dr. Ravi's examination, the plaintiff demonstrated a full range of motion except for decreased flexion of the knee joints, he had normal muscle bulk and tone and motor strength in the upper and lower extremities, and "no spasm, tenderness, crepitus, effusions, deformities, or trigger points.... weakness [or] atrophy"(Tr. 337-38). These observations support Dr. Ravi's opinion that the claimant is capable of doing some work.

Further, Dr. Ravi's opinions are also more consistent with the other medical opinions concerning the plaintiff's residual functional capacity than Dr. Melton's. Thus, Dr. Morris Kutner, who performed a consultative

---

[4]The plaintiff argues in his memorandum that Dr. Ravi's specialty is obstetrics and gynecology (Doc. 16, p. 18). However, there is no record evidence supporting that contention. The record states that Dr. Ravi is a medical doctor and, as the Commissioner points out, Dr. Ravi's report is described in the transcript as a "Rheumatology Consultative Examination" (Tr. 3C).

examination of the plaintiff in 2002, opined only that the plaintiff should not have a job that requires him to do extensive walking, and that, if he was required to stand in place, he should be allowed to sit down every two hours or so to rest (Tr. 168). Further, a state reviewing non-examining physician opined that the plaintiff could perform medium work (Tr. 180), which is even less restrictive than Dr. Ravi's assessment.

These opinions, moreover, are supported in the record by numerous physical examinations during which the plaintiff demonstrated functioning that is normal or only mildly restricted, and the absence of significant systems abnormalities (see Tr. 167, 192, 200, 203-04, 206-08, 213-14, 336-37). The plaintiff's comments to medical providers that "he doesn't let pain stop him from doing what he wants to do" and that the pain "does not affect his activities of daily living" (Tr. 166, 200) further buttress these findings.

Finally, the plaintiff argues that Dr. Melton's opinions should have been given more weight because Dr. Melton had more medical records available for his review (Doc. 16, p. 18). As the Commissioner points out,

-24-

neither physician had the plaintiff's complete medical file (Doc. 18, p. 16). Further, the plaintiff has not shown that the records before Dr. Ravi were insufficient to form an opinion as to his residual functional capacity.

Of particular significance to the plaintiff was Dr. Melton's diagnosis of "advanced degenerative osteoarthritis, knees bilateral" (Doc. 16, p. 18). However, Dr. Ravi similarly diagnosed the plaintiff with "[o]steoarthritis of bilateral knees" and had in his possession an "MRI of both knees[which] show[ed] osteoarthritis and non-calcified bodies" (Tr. 334, 337). Thus, both physicians similarly opined that osteoarthritis was the cause of the plaintiff's knee pain, but differed on the extent to which this impairment hindered the plaintiff's functioning.[5]

---

[5]The plaintiff also argues, without discussing their significance, that Dr. Ravi did not have Dr. Goodwin's February and March 2003 records, or spinal x-rays taken by Dr. Melton (Doc. 16, pp. 18-19). However, Dr. Goodwin's February 2003 record assesses osteoarthritis in both knees (Tr. 196), which is a diagnosis Dr. Ravi was already aware of, and made himself (Tr. 337). Further, Dr. Goodwin's March 31, 2003, records after arthroscopic surgery state favorably that the plaintiff "has minimal swelling in his knee. He moves his knee fairly well" (Tr. 202). Finally, although the plaintiff's chief complaint was knee pain (Tr. 334, 462, 465), Dr. Ravi did not disregard the plaintiff's back condition; thus, records in Dr. Ravi's possession indicated low back pain (see Tr. 189, 192), and Dr. Ravi evaluated the plaintiff's range of motion in both the cervical and lumbar regions of the spine (Tr. 336), which did not reveal significant limitations (see Tr. 338).

Moreover, the law judge found that Dr. Ravi's consultation was more comprehensive than Dr. Melton's (Tr. 267). Thus, among other things, the law judge noted that Dr. Ravi's evaluation contained significant details absent from Dr. Melton's report regarding the plaintiff's employment, observations of the plaintiff's movements, and assessments of the plaintiff's gait and station (Tr. 265-67).

In sum, the law judge's reasons for according greater weight to Dr. Ravi's opinions are reasonable, and supported by substantial evidence. Although the plaintiff cites evidence which may support a contrary conclusion, he has not shown that the evidence compels such a conclusion. See Adefemi v. Ashcroft, supra, 386 F.3d at 1027.

C. The plaintiff's final contention is that "The ALJ's Residual Functional Capacity Assessment In This Case Was Flawed" (Doc. 16, pp. 21-24). The plaintiff contends that the law judge should have determined he was limited to sedentary work, and concluded that he was disabled under the medical-vocational guidelines (id., pp. 23-24). This contention is meritless since the guidelines do not apply in this case.

The law judge found that the plaintiff was not disabled based on the determination that he was "capable of performing past relevant work as an order clerk" (Tr. 267), which the vocational expert testified was sedentary work (Tr. 484). The determination of whether the claimant can perform prior work is step four of the sequential analysis. The guidelines do not come into play until step five. Consequently, if, as the law judge found, the plaintiff can perform past work, the guidelines are inapplicable.

The plaintiff contends, in a conclusory manner, that the law judge's determination that he can perform his prior work as an order taker is controverted by his testimony that he could not sit for a prolonged time, and by Dr. Melton's opinion that he could sit less than six hours during the workday (Doc. 16, p. 24). However, as explained above, the law judge did not find the plaintiff's testimony fully credible, so he did not have to accept the plaintiff's testimony regarding his ability to remain seated, and the plaintiff did not challenge that credibility determination. Additionally, Dr. Melton's opinion regarding the plaintiff's ability to sit was rejected, and that determination was also supported by substantial evidence. Therefore, the

-27-

plaintiff's conclusory argument that his testimony and Dr. Melton's opinions dictate that he could not perform prior work is unmeritorious.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this 2ⁿᵈ day of August, 2010.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE